MILLER ET AL. *v.* MILLER, ADMR., ET AL.
MILLER, ADMR., ET AL. *v.* MILLER ET AL.

(Decided March 26, 1934.)

*Mr. Wm. R. Collins,* for plaintiffs in error.
*Messrs. Foulk & Solomon,* for defendants in error.

Ross, J.   An error proceeding and an appeal from a judgment of the Court of Common Pleas of Hamilton county were presented to this court simultaneously.

The appeal will be dismissed.   The case is not one in chancery.   No trust is involved. *Crowley, Admr.,* v. *Crowley,* 124 Ohio St., 454, 179 N. E., 360.

The controversy is between the brothers, sister, and next of kin of Harry B. Miller, deceased, and the nephews, nieces, and next of kin of his relict, Clara J. Miller, now also deceased, and arises in an action brought by the administrator of the estate of Clara J. Miller, deceased, for instructions as to the distribution of her estate.   The matter was presented to the court upon an agreed statement of facts.   The items of the estate of Clara J. Miller, deceased, involved in the dispute consist of:

"1.   Proceeds of Policy No. 1125784, Prudential Insurance Company of America, $1,021.17.

"2.   Proceeds received from Sheriff of Hamilton County, from partition, Case No. A-33988, Common Pleas Court, covering sale of 3816 Trevor Ave., Cheviot, $699.33.

"3.   One-half net estate of Harry B. Miller, de-.

ceased, as per decree in Case No. A-36547, Common Pleas Court, Hamilton County, Ohio, $5,003.61.

"4. Year's allowance set off by appraisers of estate of Harry B. Miller, deceased, $1,200.00.

"5. Allowance in lieu of exemption of certain specific household goods, as per order of Court in Case No. A-36547, Common Pleas Court, Hamilton County, Ohio, $2,500.00."

Harry B. Miller predeceased his relict by only a few days. Before she had any opportunity to make an election to take under his will, or exercise her right of selection of household effects under the provisions of Section 10509-54, General Code, she died. She left a will making her deceased husband the sole beneficiary. As he had predeceased her there was a lapse, and she died to all intents and purposes intestate.

The descent of an estate which comes from a deceased spouse is provided for in Section 10503-5, General Code, which reads as follows:

"When the relict of a deceased husband or wife dies intestate and without issue, possessed of any real estate or personal property which came to such relict from any deceased spouse, by deed of gift, devise, bequest or descent, then such estate, real and personal, except for the intestate share of the surviving spouse, if any, of such relict, shall pass to and vest in the children of the deceased spouse from whom such real estate or personal property came, or the next of kin of deceased children. If there are no children or next of kin of deceased children, then such estate, real and personal, except for the intestate share of the surviving spouse, if any, of such relict, shall pass and descend one-half to the brothers and sisters of such relict, or the next of kin of deceased brothers and sisters, and one-half to the brothers and sisters of the deceased spouse from whom such real estate or personal property came, or the next of kin of deceased brothers and sisters."

It would appear at the outset that the words immediately following the phrase "which came to such relict from any deceased spouse", to wit, "by deed of gift, devise, bequest or descent", are words of limitation and definition rather than words of amplification or extension. All property which came from the deceased spouse is not included in the purview of the section. Only that which came by deed of gift, devise, bequest, or descent is included. The first three of these methods of transmission of interest require some voluntary act on the part of the deceased spouse. The fourth does not, and may be effected by statutory provisions alone. Referring to the items of the estate of Clara J. Miller, deceased, it is apparent at once that none of these was created a part of her estate by any act of Harry B. Miller which can properly be denominated "deed of gift", "devise", or "bequest".

We are thus confined to a determination whether the several items in question came into the estate of Clara J. Miller by "descent" from her deceased spouse.

The first two items, the proceeds from the insurance policy, in which she was the beneficiary, and the proceeds of the partition sale of the property, in which she had a one-fourth interest, are eliminated at once. There can be no argument about these, and we understand that no serious claim is made to these items by the brothers and sister of Harry B. Miller.

Just as easily the item constituting the year's allowance and the item constituting the differential value of household effects are eliminated, for in each case the item came into the estate of the relict, Clara J. Miller, by operation of the pertinent statute making the payment of the amount a debt of her deceased husband's estate. These sums of money no more descended to the widow than would taxes descend to the county treasurer, or costs paid out of the estate "descend" to the Probate Court. In each case the item

was paid out of the estate of the husband, but was the payment of a charge or debt. Section 10509-54, General Code, specifically provides that the differential value between $2,500 and the value of the selected household effects "shall be a charge on all property, real and personal, belonging to the estate" of the deceased spouse.

Section 10509-76, General Code, is as follows:

"The appraisers shall not include in the inventory the provisions, property or money set off and allowed by them to the widow or children, but these must be stated in a separate schedule, and returned with the inventory, to the court, by the executor or administrator."

Section 10509-121, General Code, provides for the payment of debts by an executor or administrator. This section is in part as follows:

"Every executor or administrator shall proceed with diligence to pay the debts of the deceased, applying the assets in the following order:

"1. Bill of funeral director not exceeding two hundred dollars, such other funeral expenses as are approved by the court, the expenses of the last sickness and those of administration.

"2. The allowance made to the widow and children for their support for twelve months."

Therefore, there was no descent of these items.

This disposes of all the items of the estate of Clara J. Miller except the payment into her estate of her share of her deceased husband's estate, provided for under the provisions of Section 10504-60, General Code, as follows:

"If the surviving spouse fails to make such election in person or by written instrument within the time limit provided by law, such spouse shall be conclusively presumed to have elected to take under the will and shall be bound accordingly, and persons may deal with property of the decedent in accordance there-

with. If the surviving spouse dies within the time limit for election without having elected, then such spouse, whether or not a citation has been issued, shall be presumed conclusively to elect to take under the statute of descent and distribution.''

This section automatically forced the estate of the deceased relict to accept a modified intestate distribution of the estate of the deceased spouse, subject to the limitation of Section 10504-55, General Code.

The statute of descent and distribution, Section 10503-4, provides in part as follows:

''When a person dies intestate having title or right to any personal property, or to any real estate or inheritance in this state, such personal property shall be distributed, and such real estate or inheritance shall descend and pass in parcenary, except as otherwise provided by law, in the following course:  *  *  *

''4. If there be no children, or their lineal descendants, three-fourths to the surviving spouse and one-fourth to the parents of the intestate equally, or to the surviving parent; if there be no parents, then the whole to the surviving spouse.''

Section 10504-60 not only refers to the statute of descent and distribution, Section 10503-4, but to Section 10504-55, in that the deceased spouse ''shall be presumed conclusively *to elect* to take under the statute of descent and distribution.''

Section 10504-55 provides that ''in the event of election to take under the statute of descent and distribution, such spouse shall take not to exceed one-half of the estate'' of the deceased spouse. Whether the election is voluntary or involuntary, Section 10504-55 applies as a limitation upon Section 10503-4. In the instant case, there being no children, the widow, were it not for Section 10504-55, General Code, would take the whole of the estate of the deceased spouse.

The former so-called ''half and half'' section was Section 8577, General Code. This has been repealed.

In its place, and somewhat modified, we find Section 10503-5.

It has been held that Section 8577, General Code, does not require the distributive share of the relict provided for by Sections 8592 and 10571, General Code, to pass back to the next of kin of the deceased spouse. *Seney, Admr.,* v. *Schroth, Admr.,* 25 C. C. (N. S.), 185, 35 C. D., 239. All these sections have been repealed.

In Section 10503-5, the new section corresponding to Section 8577, the word "descent" has been added to the other forms of transmission of title—devise, bequest, and deed of gift. Does the addition change the former conclusion reached in construing Section 8577, General Code?

Section 10502-1, General Code, provides in part as follows:

"In lieu of such dower interest as terminates and is barred pursuant to the provisions of this section, a surviving spouse shall be entitled to the distributive share provided by the statute of descent and distribution."

One entitled to dower takes by purchase and not by testament or inheritance. *Kling* v. *Ballentine,* 40 Ohio St., 391; 14 Ohio Jurisprudence, 606, Section 3.

It is our conclusion, therefore, that the relict took under the provisions of Sections 10504-60, 10504-55, and 10502-1, General Code, and not by virtue of Section 10503-4, which was simply designated by the Legislature for the purpose of defining the quantity of her share limited by Section 10504-55, and not as a statute of descent. Were the relict to take under Section 10503-4, by reason of the intestacy of her deceased spouse, an entirely different situation might be presented. We find it unnecessary to pass upon this, as Harry B. Miller died testate. The estate of his relict was forced to take what the law awarded, by reason of her death before election.

The judgment of the Court of Common Pleas of Hamilton county is affirmed.

*Judgment affirmed.*
*Appeal dismissed.*

HAMILTON, P. J., concurs.